People v Corr (2024 NY Slip Op 03379)

People v Corr

2024 NY Slip Op 03379 [42 NY3d 668]

June 20, 2024

Troutman, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, March 5, 2025

[*1]

The People of the State of New York, Respondent,
v
Matthew Corr, Appellant.
The People of the State of New York, Respondent, v Bryan McDonald, Appellant.

Argued May 16, 2024; decided June 20, 2024

People v Corr, 208 AD3d 136, affirmed.
People v McDonald, 207 AD3d 669, affirmed.

{**42 NY3d at 672} OPINION OF THE COURT

Troutman, J.

Generally, those convicted of sex offenses in other states must register under the Sex Offender Registration Act ([SORA] Correction Law § 168 et seq.) upon relocating to New York (see People v Talluto, 39 NY3d 306, 309 [2022]). While the statute requires some sex offenders to register for life (see Correction Law § 168-h [2]), those in the lowest risk category register for a term of 20 years (see id. § 168-h [1]). The issue here is whether the statute entitles sex offenders who are classified in that lowest risk category upon relocating to New York to credit for their time registered as sex offenders under the laws of other states. We hold that it does not and affirm.
Defendant in each of these appeals was convicted in another state of an offense that required him to register as a sex offender under the laws of that state. Some years later, each defendant relocated to New York and was required to register as a level one risk under SORA. Neither is designated a sexual predator, sexually violent offender, or [*2]predicate sex offender. During the risk level determination hearings under Correction Law § 168-k (2), each defendant requested that Supreme Court{**42 NY3d at 673} order him registered nunc pro tunc to the date when he registered as a sex offender in the state where he was convicted of his sex offense, in effect giving him credit for the time registered in the foreign jurisdiction against the 20-year registration period. The courts denied the requests, and the Appellate Division affirmed (People v Corr, 208 AD3d 136 [2d Dept 2022]; People v McDonald, 207 AD3d 669 [2d Dept 2022]).
The "duration of registration and verification" for sex offenders classified under SORA as level one risks—other than those designated a sexual predator, sexually violent offender, or predicate sex offender—is "annually for a period of [20] years from the initial date of registration" (Correction Law § 168-h [1]). Defendants contend that, in the case of an out-of-state sex offender, the phrase "initial date of registration" plainly refers to the date the offender "initially" registered in the state of conviction, as opposed to the date of "subsequent" registration in New York. The People respond that SORA's use of the phrase "initial date of registration" refers to the date when an offender first registers under SORA. Although defendants also raise constitutional challenges, those challenges are not preserved for our review (see Talluto, 39 NY3d at 310), and we therefore lack jurisdiction to entertain them.
The issue before us is purely one of statutory interpretation, and we apply our well-established rules to determine legislative intent. " 'Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning' " (id. at 311; see People v Galindo, 38 NY3d 199, 203 [2022]). We thus start with the statutory text, "guided by the principles that a statute . . . must be construed as a whole and that its various sections must be considered together and with reference to each other" (People ex rel. McCurdy v Warden, Westchester County Corr. Facility, 36 NY3d 251, 257 [2020] [internal quotation marks omitted]). Relatedly, absent any indication of an intention to the contrary, "where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout, and the same meaning will be attached to similar expressions in the same or a related statute" (McKinney's Cons Laws of NY, Book 1, Statutes § 236 at 401 [1971 ed]; see People v Bolden, 81 NY2d 146, 151 [1993]). Courts " 'cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the [l]egislature did not see fit to enact' " (People v Hardy, 35 NY3d 466, 474 [2020]).{**42 NY3d at 674}
The meaning of the phrase "initial date of registration" cannot be discerned by reading Correction Law § 168-h (1) in isolation, and therefore we look to its use in other sections of SORA for guidance. Construing the statute as a whole, as we must, we conclude that the phrase "initial date of registration" refers to the date when an offender first registers under SORA. The durational requirements in Correction Law § 168-h (1) are explicitly tied to the annual verification requirements, which are set forth in a preceding section of SORA. Specifically, Correction Law § 168-f (2) sets forth the obligations that a registrant is required to fulfill by reference to the "initial registration date":
"For a sex offender required to register under this article[,] on each anniversary of the sex offender's initial registration date during the period in which he is required to register under this section[,] the following applies:
"(a) The sex offender shall mail the verification form to the division within [10] calendar days after receipt of the form," etc.
The phrase "initial registration date" expressly references the offender's registration under SORA. Our dissenting colleagues appear to agree that the phrase "initial registration date" in section 168-f (2) refers to the first time an offender registers "after the offender is subject to New York's SORA" (Rivera, J., dissenting op at 
682-683). We understand the statute's subsequent use of the materially identical phrase "initial date of registration" to have the same meaning. Considering the two interconnected provisions together, we conclude that the "initial date of registration" refers to the date when an offender first registers under SORA, not the date an offender is required to register under the laws of another jurisdiction.
Our construction finds further support in the section that immediately follows Correction Law § 168-h, which states that "[r]egistration and verification as required by this article shall consist of a statement in writing signed by the sex offender giving the information that is required by the [D]ivision [of Criminal Justice Services,] and the division shall enter the information into an appropriate electronic data base or file" (Correction Law § 168-i). Because[*3]"registration," as the term is used in SORA, requires interaction with a New York agency,{**42 NY3d at 675} the "initial date of registration" must refer to the date the offender first registers in New York.[FN1]
In reaching their conclusion that the "initial date of registration" refers to the date an offender registers in the state of conviction, our dissenting colleagues read Correction Law § 168-h (1) in isolation. But our well-established rules of statutory construction do not require or permit us to read disputed statutory provisions in isolation. To the contrary, a statutory provision that appears plain on its face may yet be ambiguous when read within the whole of the statute in which it appears (see New York State Psychiatric Assn., Inc. v New York State Dept. of Health, 19 NY3d 17, 25 [2012]; McKinney's Cons Laws of NY, Book 1, Statutes § 76, Comment at 172 [1971 ed]).
Setting aside our dissenting colleagues' context-free interpretation of "initial date of registration," nothing in SORA provides or even arguably suggests that the legislature intended for an offender's registration in another state to have any effect on the conditions of registration in New York.[FN2] Nowhere is this absence more glaring than in Correction Law § 168-k ("Registration for change of address from another state"), which contains detailed procedures for the registration, classification, and designation of a sex offender who relocates to New York from another state or jurisdiction, all without reference to the offender's registration, if any, in the jurisdiction where the offender previously resided. Section 168-k does not create procedures for the SORA court to establish the offender's date of registration in the state of conviction, to order the offender registered nunc pro tunc to that date, nor to afford the offender credit for time spent on registries in other jurisdictions. Surely, if the legislature intended for the phrase "initial date of {**42 NY3d at 676}registration" to require the SORA court to do any of these things, there would be some indication of it in this section.
Such credit, defendants correctly observe, is permitted under federal law. But this observation undermines defendants' position. The guidance of the United States Department of Justice for the states' implementation of Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (the Jacob Wetterling Act) (Pub L 103-322, title XVII, 108 US Stat 1796), which first sought to create guidelines for the states' establishment of sex offender registries, explained:
"The [federal] durational requirements for registration of offenders convicted in other states are the same as those for in-state offenders—registration for at least 10 years or for life as provided in subsection (b)(6) of the Act. If a portion of the applicable registration period has run while the registrant was residing in another state, a new state of residence may give the registrant credit for that period. For example, if a person required to register for 10 years under the Act's standards has lived for six years following release in the state of conviction, another state to which the registrant moves at that point does not have to require registration for more than the four remaining years" (Atty Gen Order No. 2196-98, 64 Fed Reg 578 [Jan. 5, 1999]).
The guidance notes that states are free to choose to give the registrant credit for a portion of the registration period that has run in another state; it does not mandate that they do so. SORA simply does not contain such a provision for assessing whether to award credit, and we have no authority to amend SORA to create one.
Defendants' reliance on the Adam Walsh Child Protection and Safety Act of 2006 (the Adam Walsh Act) (34 USC § 20901 et seq.), which replaced the Jacob Wetterling Act, is also unavailing. Although defendants correctly note that the phrase "initial registration" as used in [*4]the Adam Walsh Act refers to the offender's registration in the state of conviction prior to release from prison or, if the offender was not sentenced to prison, upon sentencing (see id. § 20913 [a], [b]), the operative language in SORA predates the Adam Walsh Act by over a decade (see L 1995, ch 192, § 2). The use of the phrase "initial registration" as it appears in the Adam Walsh Act thus has no bearing on the intent of the legislature that enacted SORA.{**42 NY3d at 677}
We recognize that the statute, as written, may lead to unfair results in some circumstances. For example, an offender with a minimal risk of reoffense who has spent substantial time compliant with an effectively administered out-of-state registry scheme without having reoffended would seem to deserve credit for that time as a matter of policy. Moreover, the diversion of public resources and attention towards offenders such as these arguably undermines the state's effort to protect the public against genuinely dangerous offenders. On the other hand, not all state registry schemes are necessarily created equal, for example, in terms of supervision and registration requirements, and there is no specific mechanism under SORA for a court to determine whether a foreign state's administration of its registry is as exacting as New York's or the extent to which a particular offender complied with his obligations under that state's statute and remained free of reoffense.
Defendants' interpretation of the statute, adopted by our dissenting colleagues, goes even further than to award sex offenders credit for time spent registered under the laws of another state. An offender who completes a required 10-year registration period in another state and then, after a period of several more years, moves to New York would receive "credit" for those several unregistered years.[FN3] This is because SORA requires offenders to register for 20 years measured from a certain date. We and our dissenting colleagues disagree only about that date from which the registration period is measured. If the operative date is the date of registration in the state of conviction, as defendants contend, then our state has no statutory authority after 20 years have elapsed from that date to require registration even of an offender who did not consistently register during the required 20-year period.
Notably, other states opting to provide credit have set forth guidelines for when credit should be awarded and have delegated rulemaking authority to the relevant agency. Under the law of Maine, for example, offenders subject to a 10-year registration period may apply to the State Bureau of Identification for "day-for-day credit for the time actually registered pursuant to" the sex offender registration statute of another jurisdiction,{**42 NY3d at 678} and "[t]he bureau may grant credit if the registrant provides sufficient documentation in accordance with any rules adopted by the bureau" (Me Rev Stat Ann title 34-A, § 11225-A [2] [A]). The Board of Examiners of Sex Offenders does not currently have this authority among its expressly delegated powers (see generally Matter of Beer Garden v New York State Liq. Auth., 79 NY2d 266, 276 [1992] ["It is of course a fundamental principle of administrative law that agencies are possessed of only those powers expressly delegated by the (l)egislature, together with those powers required by necessary implication"]). Even in a state such as Maine, where the risk level is assigned "automatically" (Rivera, J., dissenting op at 
685-686 n 3), the legislature provided for the promulgation of guidance on the issue of credit for time spent under another jurisdiction's registration regime. In New York, by comparison, the legislature opted to create a Board and provide it with the authority to issue binding guidelines and recommendations to the sentencing court regarding a sex offender's risk level (see Correction Law § 168-l [1], [5], [6]). It would be wholly inconsistent with the New York Legislature's comprehensive approach to sex offender registration to leave unaddressed the mechanism for awarding credit for out-of-state supervision.[FN4] No mechanism is provided because no credit is due. If such credit is to be [*5]awarded, it is for the legislature to make those policy determinations, pass the relevant law, and delegate any rulemaking authority.
Finally, this is not the only provision in SORA that treats out-of-state sex offenders differently than it treats in-state sex{**42 NY3d at 679} offenders (see Talluto, 39 NY3d at 314 n 4). In Talluto, we recognized that Correction Law § 168-a (3) (b) "requires any person subject to SORA's foreign registration requirements to be designated a sexually violent offender regardless of whether the underlying offense is violent in nature" (id. at 309). The result for the defendant in that case was no less "absurd" than the hypothetical circumstances outlined in Judge Rivera's dissent (Rivera, J., dissenting op at 
687-688). While recognizing that this requirement, based on SORA's plain text, "may well" have resulted from a "legislative drafting error," we unanimously concluded that we were without the power to rewrite the statute (Talluto, 39 NY3d at 314-315). The same rule applies here.
Accordingly, in each case, the order of the Appellate Division should be affirmed, without costs.

Rivera, J. (dissenting).
The common question in these appeals is the meaning of four words in New York's Sex Offender Registration Act (SORA), Correction Law § 168-h: "initial date of registration." Under first principles of statutory interpretation, we give the words their plain meaning, treat words not included by the Legislature as intentionally omitted, and avoid an interpretation that leads to absurd and unjust results. Applying those principles here, the language refers to the date that a sex offender registers for the first time, whether in New York or another jurisdiction. Because the words are unambiguously temporal, and contain no geographic limitation, New York courts may credit offenders that they designate the lowest risk to reoffend the time from an initial out-of-state registration towards SORA's 20-year registration period.
The majority adopts a strained reading of SORA to reject the commonly understood, longstanding meaning of "initial" as "the first," and thereby justify its conclusion that section 168-h means "initial registration in New York." The majority ignores our rules of statutory interpretation to artificially restrict the SORA court's legislatively mandated authority and create a statutory bar for an entire class of low-risk offenders. Had the Legislature intended a reading with such significant consequences, it would have said so expressly. I dissent.
[*6]
I.
Defendants are sex offenders who registered for the first time in other jurisdictions and who, upon relocating to New York, were required to register here. They were sentenced to{**42 NY3d at 680} five-year and one-year terms of probation, respectively, and were each registered out-of-state for a period between three and four years. As the majority notes, one defendant was convicted of an offense that is not SORA-registrable if committed in New York, but which required registration here because of his registration out of state (Correction Law § 168-k [1], [2]).
In accordance with SORA, the Board of Examiners of Sex Offenders (the Board) reviewed the defendants' records and, in both cases, recommended adjudication as a level one risk with no designation—the lowest risk to reoffend (Correction Law § 168-l [6] [a]). The prosecution supported these designations. During their separate SORA hearings before the same court and judge, the court adopted the recommendations and designated defendants as level one sex offenders, requiring 20 years of registration. The court denied each defendant's request to credit the time they spent registered in other jurisdictions.
The Appellate Division affirmed in both cases (People v Corr, 208 AD3d 136 [2d Dept 2022]; People v McDonald, 207 AD3d 669 [2d Dept 2022]). In Corr, the Court reasoned that the Legislature's failure to expressly provide "that the duration of registration in New York should be pro forma reduced by the amount of time" registered elsewhere "compels the conclusion" that it intended the time be calculated from the date of the offender's registration in New York (208 AD3d at 139-140). Citing to Corr, the Appellate Division summarily affirmed in McDonald (207 AD3d at 669). We granted defendants leave to appeal (People v Corr, 39 NY3d 905 [2023]; People v McDonald, 39 NY3d 906 [2023]).
II.
Defendants contend they may be granted credit from their initial date of registration in another jurisdiction based on the plain language of Correction Law § 168-h, SORA's overall purpose, and common judicial practice in the lower courts.[FN1] The prosecution responds that SORA requires all offenders to register for 20 years from the date of their registration in New York, and that by denying defendants the credit they seek,{**42 NY3d at 681} Supreme Court treated defendants the same as New York residents who must likewise register for 20 years from the date of their New York registration. I conclude that the plain language controls and that the majority, like the lower courts, erroneously concludes that New York courts are statutorily barred from granting credit in appropriate cases to level one offenders who first registered in another jurisdiction.
[*7]
A.
Section 168-h (1) of the Correction Law provides that the duration of registration for a level one sex offender with no designation of sexual predator, sexually violent, or predicate sex offender "shall be annually for a period of twenty years from the initial date of registration." The rules for statutory interpretation are settled and not at issue. The "starting point" is "the language itself" (Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce, 21 NY3d 55, 60 [2013]). Our task is to "effectuate the intent of the Legislature, and when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used" (People v Williams, 19 NY3d 100, 103 [2012], citing People v Finnegan, 85 NY2d 53, 58 [1995]). Where the words have a "definite meaning, which involves no absurdity or contradiction, then there is no room for construction and courts have no right to add or take away from that meaning" (People v Roberts, 31 NY3d 406, 418 [2018], citing People v Robinson, 95 NY2d 179, 182 [2000]; Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; see also People v Talluto, 39 NY3d 306, 312 [2022], citing Riley v County of Broome, 95 NY2d 455, 463 [2000] ["As a general rule, unambiguous language of a statute is alone determinative"]; McKinney's Cons Laws of NY, Book 1, Statutes § 76).
The commonly understood meaning of "initial" is "first." By definition, it cannot refer to a subsequent, later registration. Therefore, when an offender relocates to New York from another jurisdiction where they were lawfully registered as a sex offender, they do not register for the first time. Rather, the offender registers a subsequent time, now in New York. The majority contravenes our rules of statutory interpretation by rewriting the statutory language to read "initial date of registration in New York" (see American Tr. Ins. Co. v Sartor, 3 NY3d 71, 76 [2004] ["A court cannot amend a statute by adding words that are not there"]). The majority ignores that {**42 NY3d at 682}section 168-h does not specify the location of the initial registration and thus unambiguously refers to the first time that an offender registers for an underlying offense, regardless of where they do so. Put another way, because the provision is temporal, not geographic, what matters is when—not where—an offender first registers.
This ends the analysis, and I would therefore reverse the Appellate Division in each appeal. The majority holds otherwise, so I now turn to the atextual reasons the majority has offered for its conclusion.
B.
The majority's analysis is grounded in the erroneous premise that other SORA sections are indispensable to the interpretive task at hand. That approach turns statutory interpretation on its head by creating ambiguity where none exists and reading dispositive meaning into language both outside and in contravention of the words actually found in section 168-h (see McKinney's Cons Laws of NY, Book 1, Statutes § 76 ["Where words of a statute are free from ambiguity and express plainly, clearly and distinctly the legislative intent, resort may not be had to other means of interpretation"]). But even if looking beyond section 168-h were warranted, the other SORA sections on which the majority relies do not support its reading of section 168-h. My reading of section 168-h is by no means "context-free" (majority op at 
675); I simply decline to search for its meaning in provisions that are irrelevant to the statutory duration of registration for low-risk offenders.
To support reading into section 168-h a legislative ban on credit in appropriate cases, the majority first turns to section 168-f (2) (a), which requires that a sex offender register on each anniversary of their initial registration. The majority adopts the prosecution's position that this section can only be read to refer to an initial registration in New York because "[t]he phrase 'initial registration date' " is preceded there by an explicit reference to registration under SORA and we must consider "the two interconnected provisions together" (majority op at 
674). The majority's interconnected-provisions argument falls flat because it takes the language out of context and emphasizes only part of section 168-f (2), ignoring that section 168-f (2) applies "during the period in which [the offender] is required to register under this section" (emphasis added). Giving proper consideration to this prefatory mandatory language{**42 NY3d at 683} makes clear that section 168-f (2) applies only after the offender is subject to New York's SORA, and not before. I do not agree, as the majority claims, that "initial registration date" as it appears in an entirely separate section can only reference registration in New York (see majority op at 
674).
Next, the majority cites section 168-i, which provides that registration and verification under SORA "shall consist of a statement in writing signed by the sex offender giving the information that is required by the [D]ivision[*8][of Criminal Justice Services]" and instructs the Division to "enter the information into an appropriate electronic data base or file." The majority suggests that this reference to "interaction with a New York agency" means that "initial date of registration" "must refer to the date the offender first registers in New York" (majority op at 
674-675). This suggestion ignores that section 168-h makes no such reference to the Division. Moreover, section 168-i is irrelevant to the interpretive task at hand because it simply sets out the process by which an offender registers in New York; it does not follow that only registration in New York can begin the 20-year period set out in section 168-h.
The majority lastly cites section 168-k, which addresses registration for offenders relocating to New York. The majority posits that because this section does not mention the offender's registration and does not provide procedures for a SORA court "to order the offender registered nunc pro tunc" to the date they register in the state of conviction, the Legislature did not intend for a SORA court to grant credit (majority op at 
675). This does not indicate legislative silence, as the majority suggests. Section 168-h already sets the 20-year New York registration period to run from the initial date of registration—without geographic limitation. There is no need to repeat what the Legislature has made plain elsewhere. Legislative drafting does not require redundancy when the meaning is clear.[FN2]
{**42 NY3d at 684}III.
Even if, as the majority appears to suggest, "initial date of registration" is ambiguous, SORA's history and purpose support interpreting the phrase to apply to out-of-state registration. First, the purpose of SORA is to protect the public from "the danger of recidivism posed by sex offenders" (Brown, 41 NY3d at 296; People v Mingo, 12 NY3d 563, 574 [2009]). The Legislature has expressly determined that this purpose is served in the case of a level one offender by a 20-year period of registration. That purpose is served regardless of whether the registration is continuous in New York or commences in another state and is subsequently completed in New York. Regardless of the location of the first registration, the offender is tracked for compliance with registration requirements.
Second, SORA was enacted to comply with the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (the JWA). The DOJ guidelines for implementation of the JWA recognized in 1999 that states "may" grant a registrant credit for time registered in another state (64 Fed Reg [No. 2] 578 [1999]). Title I of the Adam Walsh Child Protection and Safety Act of 2006 (34 USC § 20901)—or "SORNA" (Sex Offender Registration and Notification Act)—later created a " 'comprehensive national system' for the registration of individuals convicted of sexual offenses" which was expressly intended to remedy "a perceived need for more effective interjurisdictional consistency and coordination" (Andrew J. Harris et al., States' SORNA Implementation Journeys: Lessons Learned and Policy Implications, 23 New Crim L Rev 315, 316 [2020]). While the legislation did not remove sex offender registries from the purview of states' police power, it "establish[ed] . . . detailed federal requirements guiding the management and operation of [registries] within states and other covered jurisdictions," including by mandating certain registrable offenses, setting minimum conditions of registration and minimum penalties for registry noncompliance, and requiring "timely transmittal of information when registrants indicate an intent to travel and/or relocate to other jurisdictions" (id. at 323-324). There can be no question that SORNA was intended to increase interstate uniformity and cooperation, and interpreting section 168-h to apply to an out-of-state registration is consistent with that objective. Indeed, when defendants moved to New York, authorities in our state had access to their registration histories in other jurisdictions (see 34 USC § 20921{**42 NY3d at 685} [creating the National Sex Offender Registry "for each sex offender and any other person required to register in a jurisdiction's sex offender registry" and requiring transmission of updated information about an offender to "all relevant jurisdictions"]).
[*9]
Notably, SORNA also expressly differentiates between an "initial registration" date, which occurs in "the jurisdiction in which [the offender is] convicted," and subsequent registration in any "other jurisdictions in which the offender is required to register" (34 USC § 20913 [a], [c]).
Third, at no point throughout the history of amendments to SORA has the Legislature specified in section 168-h that a level one offender must register for a period of 20 years from their date of registration in New York, despite that courts have been granting the credit that defendants here seek since as early as 2007, and the Appellate Division acknowledged the practice in 2011 (see People v McGarghan, 18 Misc 3d 811 [Sup Ct, NY County 2007], affd 83 AD3d 422 [1st Dept 2011]). We assume the Legislature is "aware of the state of the law" when it enacts or amends a statute (People v Galindo, 38 NY3d 199, 205 [2022]). Given the Legislature's concerns about public safety and law enforcement regarding sex offenders, we would expect that the Legislature would act expeditiously to correct any misinterpretation that placed the public in danger.
As evidenced by this common judicial practice, New York SORA courts are fully capable of and charged with fact-finding to determine an offender's risk level, which necessarily includes setting the start date for a level one registration.[FN3] SORA provides that an offender relocating to New York must receive{**42 NY3d at 686} a SORA hearing in which the court is "tasked with the individual assessment of a defendant's risk, based on the available information and upon findings of fact" (People v Brown, 41 NY3d 279, 296 [2023], citing Correction Law § 168-l). This requirement applies whether an offender committed their crime in New York or elsewhere. An offender seeking credit for time registered elsewhere must meet their burden of proof by demonstrating that they lawfully registered in another jurisdiction on a particular date. If the court concludes that the offender failed to meet their burden, it need not grant credit for that time. Moreover, to the extent that the offender has failed to comply with their registration requirements in the other jurisdiction or has reoffended, the court may determine that an upward departure to level two or three is appropriate. That designation requires the offender to register in New York for life. The offender may appeal that decision, allowing an appellate court to take necessary corrective action to ensure an offender's accurate risk level designation.
The majority also makes the baseless assertion that allowing SORA courts to grant credit for time spent lawfully registered in another state would allow offenders to receive credit for "unregistered years" in another state (majority op at 
677). Taking the majority's example, "[a]n offender who completes a required 10-year registration period in another state and then, after a period of several more years, moves to New York" would receive 10 years of credit—the amount of time they were registered in another state, measured from their initial date of registration in that state (id.). No competent judge would rule otherwise.
Finally, the majority adopts the prosecution's purely speculative claim that New York courts cannot be certain that other states have comparable registration schemes for low-level offenders, or that authorities in other states take their enforcement duties as seriously as New York authorities (majority op at 
677). Significantly, the prosecution has identified no state in which the reporting requirements for low-level offenders is materially different from New York's scheme. That is unsurprising, given that the federal law sets out uniform conditions of registration and [*10]minimum penalties for noncompliance (see 34 USC § 209). Surely, as defendants argue, if the jurisdictions{**42 NY3d at 687} where defendants were registered—or for that matter any jurisdiction in the United States and its territories—had a subpar registration regime for level one offenders as compared to New York, the prosecution would have presented evidence of such before the SORA court and the Appellate Division, and relied upon that record before this Court. Nor did the prosecution establish that defendants' conduct was unsatisfactory before they relocated to New York. In fact, the prosecution agreed with the Board's recommendation that each defendant be classified as a level one without designation based on defendants' respective records (Correction Law § 168-l [6] [a]). The SORA court classified defendants as such. The court denied credit for the out-of-state registration based solely on its reading of the statute, not on any factual determination that the jurisdictions where the defendants were previously registered had more lenient registration schemes, were unable to document misconduct by defendants, or any of the other reasons the majority hypothesizes.
The federal government does not share these concerns. As the majority acknowledges (majority op at 
676), the federal government has contemplated since 1999 that states may grant credit for prior registration in another state (Pub L 103-322, title XVII, 108 US Stat 1796; formerly 42 USC § 14071).
IV.
If the text, rules of interpretation, SORA's purpose and history, and the federal SORNA framework are not enough to drive the analysis here, the majority's interpretation cannot control because it leads to absurd and unjust results. Several examples illustrate the point.
Assume that two sex offenders with similar criminal and SORA-compliance histories commence registration on the same day, June 1, 2024, one in New York, one in another state. The New Yorker is classified a level one offender without designation and must register for 20 years, until June 1, 2044. The other offender moves to New York on June 1, 2034, having already registered for 10 years, and is also classified by the SORA court as a level one offender without designation. Under the majority's interpretation, this offender must register until 2054, a full 10 years longer than the other similarly situated offender simply because one committed their offense outside of New York.
By way of another example, assume a level one offender without designation registers in New York on June 1, 2024,{**42 NY3d at 688} then five years later, on June 1, 2029, moves to another jurisdiction where they register. Although it is an open question in our Court whether the offender must continue to register in New York, the offender does so to comply with the Appellate Division's interpretation of SORA as imposing such requirement (see Matter of Doe v O'Donnell, 86 AD3d 238 [3d Dept 2011], lv denied 17 NY3d 713 [2011]). After another five years, the offender returns to New York on June 1, 2034, and is required to register for another 10 years to June 1, 2044, to reach the aggregate mandatory 20 years registration period. If that offender instead had initially registered on the same date but in another state on June 1, 2024, then moved to New York five years later, on June 1, 2029, and also was classified a level one offender without designation, they would have to register for another 20 years, until June 1, 2049, despite that in each case the offender would have been registered for the exact same period of time in another state.
As a last example, assume two out-of-state offenders, one of whom has registered for 19 years and 11 months and one of whom has registered for one month, move to New York where the SORA court classifies them both as level one without designation. According to the majority's view, both offenders must newly register for 20 years, with the result that the first offender registers for a total of one month shy of 40 years and the other registers for 20 [*11]years and one month, even though they have received the same lowest risk to reoffend designation.[FN4] The majority fails to identify what public policy furthers such disparity.
The majority acknowledges that "the statute, as written may lead to unfair results in some circumstances" (majority op at 
677). Unfair results are not inevitable unless, like the majority,{**42 NY3d at 689} one adopts an interpretation that bars credit solely if the offender first registers in another jurisdiction. For years, New York courts have rejected that assumption as contrary to the plain meaning of section 168-h and SORA's animating policy. To the extent the majority recognizes that the Legislature may correct its misreading of the statute, at least we agree on that point.

Dissenting opinion by Halligan, J. 
Halligan, J. (dissenting).
I agree with Judge Rivera's conclusion that the phrase "initial date of registration" as used in Correction Law § 168-h means the first time that a sex offender registers for the underlying offense, without any geographic qualification (Rivera, J., dissenting op at 
681-682). I also agree that use of a similar phrase, "initial registration date," in other sections of the statute does not compel a different interpretation (Rivera, J., dissenting op at 
682-683). I therefore join parts I, II, and IV of Judge Rivera's dissenting opinion.
Had the Legislature meant what the majority says it did—"initial date of registration in New York"—it presumably would have used those terms in drafting the statute. And that policy choice should be left to the Legislature, not this Court (see People v Talluto, 39 NY3d 306, 315 [2022] ["we are constrained to construe" SORA "according to its plain language"]; Tompkins v Hunter, 149 NY 117, 122-123 [1896] ["In construing statutes, it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning . . . courts have no right to add to or take away from that meaning"]).
Nor does legislative intent support the majority's reading of section 168-h. As the majority notes, Correction Law § 168-k, titled "Registration for change of address from another state," sets forth highly detailed procedures for sex offenders who establish residence in New York State (see majority op at 
675-676). The majority concludes that the omission of any procedures for crediting time on another state's registry, in the face of this specificity, shows that the Legislature intended to preclude credit (id.). But it appears more likely the Legislature did not consider the question at all. Most of section 168-k's detailed provisions, along with other provisions of SORA, were enacted in response to a federal district court decision enjoining SORA's enforcement on due process grounds (see Doe v Pataki{**42 NY3d at 690}, 3 F Supp 2d 456, 471, 478-479 [SD NY 1998]).[FN1] Doe specified various procedural protections that must be accorded sex offenders facing a risk level classification (see Doe, 3 F Supp 2d at 471-472). The Legislature then put those protections in place for all offenders—those convicted in New York State and those convicted out of state. Although set forth in different subsections of the statute, the procedures for these two groups of offenders are substantively identical (compare Correction Law § 168-k [2], with §§ 168-d [2], 168-n [3]), and both closely track the requirements mandated by the district court (compare Doe, 3 F Supp 2d at 471-472, with Correction Law § 168-k [2]). Doe itself did not address out-of-state convictions, and neither of the two classes of sex offenders who brought the action appears to include individuals convicted outside of New York State (see Doe, 3 F Supp 2d at 459). Likewise, there is no indication the Legislature considered this population in enacting section 168-l (cf. majority op at 
678), or in amending section 168-h in 2006 (cf. majority op at 674-675).[FN2]
All of this suggests that the Legislature gave no particular consideration to how to treat offenders convicted out of state as a distinct group, and certainly not to whether time spent on another state's registry should be credited by a New York SORA court. Absent any indication that the Legislature considered this question, its silence cannot shed light on what the Legislature intended on this point (see{**42 NY3d at 691} Tafflin v Levitt, 493 US 455, 461-462 [1990] [rejecting argument premised on legislative intent where statute was silent on the issue and legislative history "reveal(ed) no evidence that Congress even considered the question"]). Thus, we are left—as always—with the text alone as our best guide (see Talluto, 39 NY3d at 314; cf. majority op at 
675 n 2).
New York's statute is almost singularly ambiguous as to when the clock for registration starts, and whether it must restart when a sex offender moves to our state. A significant number of states count registration years from a date that remains constant (and certain) under any reading, regardless of whether an offender moves across state lines, such as the date of an offender's release from incarceration, probation, parole, or other supervision, or the date of conviction or sentencing (see e.g. Cal Penal Code § 290 [e]; 730 Ill Comp Stat Ann 150/7; NJ Stat Ann § 2C:7-2 [f]).
Several of these states provide further instructions for out-of-state offenders who establish in-state residency, such as by designating what court they should apply to for relief from registration requirements if their court of conviction is elsewhere (see e.g. Idaho Code Ann § 18-8310 [1]; Mich Comp Laws Ann § 28.728c [4]; NH Rev Stat Ann § 651-B:6 [II], [V]), or clarifying that a sex offender must register for the longer of the time required in their state of residence or in their state of conviction (see e.g. Ind Code Ann § 11-8-8-19 [f]; Iowa Code Ann § 692A.106 [8]; Minn Stat Ann § 243.166 Subd. 1b [b] [3]). Other states provide that a sex offender living within their borders must register for as long as they would be required to register in the convicting jurisdiction (see e.g. Conn Gen Stat Ann § 54-253 [c]; 42 Pa Stat and Cons Stat Ann § 9799.15 [a] [7]; SC Code Ann § 23-3-462 [A] [1] [c]). Still other states expressly provide in their statutes that the relevant authority may credit time when the sex offender is absent from that state but registered and compliant elsewhere (see e.g. Alaska Stat Ann § 12.63.020 [a] [1] [B] [ii] [registration period "may include the time a sex offender . . . was absent from this state if the sex offender . . . has complied with any . . . registration requirements of the jurisdiction" and "provides the department with proof of the compliance"]; DC Code Ann § 22-4002 [a] [1] ["The Agency may give a sex offender credit for the time the sex offender was registered in another jurisdiction"]; Me Rev Stat Ann title 34-A § 11285 [2] [A] ["registrant may receive day-for-day credit for the time actually registered pursuant to{**42 NY3d at 692} the other jurisdiction's sex offender registration statute prior to registering in this State upon applying to the bureau for credit . . . if the registrant provides sufficient documentation in accordance with any rules adopted by the bureau"]; Nev Rev Stat Ann § 179D.490 [3] [b] ["registration begins on the date that the Central Repository or appropriate agency of another jurisdiction establishes a record of registration for the offender or sex offender or the date that the offender or sex offender is released, whichever occurs later"]; Ohio Rev Code Ann § 2950.07 [E] [sheriff shall grant "credit against the duty to register for time for which the offender . . . provides adequate proof that the offender . . . has complied with the . . . registration requirements of another jurisdiction"]).
A few states have adopted statutes that specifically provide for the result imposed by the majority here: Irrespective of how long a sex offender has been registered elsewhere, the duration of their registration within that state runs from the initial date of registration there, with no credit for registration in another jurisdiction (see e.g. Ark Code Ann § 12-12-919 [b] [1] [A] [ii] [a sex offender sentenced in another state but permanently residing in Arkansas may apply for an order terminating the obligation to register "(a)fter fifteen (15) years of having been registered as a sex offender in Arkansas"]; La Stat Ann § 15:544 [D] [2] [a person required to register pursuant to Louisiana Law "shall receive credit only for the period of time in which he resides in this state and is in compliance with all registration and notification requirements of this state"]; see also Tenn Code Ann § 40-39-207 [i] [4] [a person may apply for removal from the registry the later of 10 years from "date of termination of active supervision or probation, parole or any other alternative to incarceration, or after discharge from incarceration without supervision," or " (f)ive (5) years after being added to the Tennessee sexual offender registry"]). Unlike New York's SORA statute, however, these statutes address the question in clear terms.
Should the Legislature decide to clarify that it is appropriate to credit time on another state's registry, it could provide important guidance as to how a SORA court should evaluate such requests. Although SORA courts are [*12]charged with fact-finding sufficient to determine an offender's risk level and can require proof that an offender had registered in another jurisdiction on a certain date and complied with that jurisdiction's requirements going forward, questions about whether and how{**42 NY3d at 693} to take into account any differences between New York's administration of its registry scheme and that of another state (majority op at 
676-677) are policy choices best left to the Legislature.
Though their approaches differ, virtually every other state legislature has clearly established how time spent registered in another state is to be counted. On one point, this Court is unanimous: Regardless of the policy choice it ultimately makes, it would be helpful for New York's Legislature to do the same.
Judges Garcia, Singas and Cannataro concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson concurs. Judge Halligan dissents in a separate dissenting opinion.
In each case: Order affirmed, without costs.

Footnotes

Footnote 1:There is also support in the legislative history. The bill jacket for the legislation that amended Correction Law § 168-h (1) to increase level one registration from 10 to 20 years stated that the "[p]urpose" of the bill was to "require[ ] most level one sex offenders to register with the Division of Criminal Justice Services for [20] years" (Senate Introducer's Mem in Support, Bill Jacket, L 2006, ch 1 at 3). The stated purpose was to require level one offenders, with some exceptions, to register with a New York agency for 20 years, and the only exceptions expressly mentioned in the statute are those level one offenders who have been designated a sexual predator, sexually violent offender, or predicate sex offender (see Correction Law § 168-h [1]), who must register with the agency for life (see id. § 168-h [2]).

Footnote 2:The absence of such intent necessarily follows from Judge Halligan's conclusion that the legislature likely "did not consider the question at all" (Halligan, J., dissenting op at 
689).

Footnote 3:States that require sex offenders to register for a minimum of 10 years include Pennsylvania (42 Pa Cons Stat § 9799.55 [a]), California (Cal Penal Code § 290 [d]), Texas (Tex Code Crim Proc Ann art 62.101 [b]), Illinois (730 Ill Comp Stat 150/7), Indiana (Ind Code § 11-8-8-19 [a]), Arizona (Ariz Rev Stat § 13-3821 [M]), and Utah (Utah Code Ann § 77-41-105 [3] [a]).

Footnote 4:On the one hand, some of our dissenting colleagues reject our comparison of SORA to a system as alien as that found in the Maine statute (Rivera, J., dissenting op at 
685-686 n 3), while at the same time claiming there is no evidence of any significant disparity between New York's approach to registration and that taken by other states (id. at 
686-687). Our colleagues also assume that the relevant laws, here and elsewhere, will remain static, a notion firmly rebutted by New York's experience (see generally People v Parilla, 109 AD3d 20, 21-29 [1st Dept 2013] [discussing post-1996 amendments to SORA "impos(ing) more stringent registration and notice requirements for convicted sex offenders"]). Furthermore, our colleagues claim that because federal legislation sets minimum standards, "registration requirements for low-level offenders are the same" in all states (Rivera, J., dissenting op at 
685-686 n 3). The flaws in this reasoning are obvious. First, New York is free to go above the floor, for example, by making "low-level offenders" (id.) register for 20 years rather than the federal minimum (see Atty Gen Order No. 2196-98, 64 Fed Reg 576 [Jan. 5, 1999]). Second, states are free to ignore the federal minimum standards as long as they are willing to forgo certain categories of federal funding (see 34 USC § 20927 [a]).

Footnote 1:Defendants assert federal and state constitutional challenges based on equal protection and due process, the right to travel, and the Privileges and Immunities Clause. Defendants also contend that, although they failed to preserve these challenges below, the Court must consider them under the principle of constitutional avoidance. I have no occasion to consider these arguments because I would reverse on statutory grounds.

Footnote 2:The legislative history of section 168-h does not compel a different conclusion. The majority points to a statement in the bill jacket that the bill's purpose was to "require[ ] most level one sex offenders to register with the Division of Criminal Justice Services for [20] years" (majority op at 
675 n 1 [emphasis added], citing Senate Introducer's Mem in Support, Bill Jacket, L 2006, ch 1 at 3). Of course, the statement is not inconsistent with defendant's interpretation of the statute because it demonstrates that the Legislature contemplated exceptions to the general rule: most—but not all—offenders will register with the Division for 20 years. The majority does not explain why the exceptions do not encompass individuals relocating to New York.

Footnote 3:The majority's observation that other states delegate the authority to award credit to an agency is as curious as it is irrelevant (see majority op at 
677). The majority's discussion of Maine is particularly inapt; Maine's registration statute does not provide for an individualized risk assessment hearing and instead assigns risk levels automatically (see Me Stat title 34-A, §§ 11273 [14]-[19]; 11285). In contrast, SORA mandates an individualized judicial determination and vests courts with broad fact-finding authority. This distinguishing procedural feature of Maine's statute sheds no light on substantive registration requirements across jurisdictions. On that relevant point, all states have substantially similar registration requirements for low-level offenders. Contrary to the majority's assertion, I do not mean that all jurisdictions have identical SORA laws (see majority op at 
678 n 4). Rather, their substantive registration requirements for low-level offenders are the same because the federal legislation sets out national minimum standards and the prosecution has offered no evidence of any state that deviates from those standards. That states are free to set longer registration periods than the federal minimum—as New York has done—is immaterial because SORA courts are empowered to determine the amount of time that should be credited.

Footnote 4:The majority suggests these examples are no more "absurd" than the outcome in People v Talluto (39 NY3d 306 [2022]). In that case, the defendant's "proposed construction" of section 168-a (3) (b) would have required the Court to "read the foreign registration clause out of the statute entirely and fail to give effect to that portion of the statute" (id. at 310). We held that, although section 168-a (3) (b) may contain "a legislative drafting error" (id. at 315), "the plain language of the statute [was] not ambiguous" and so we were "bound to follow it" (id. at 314). The majority does the opposite today, disregarding the plain meaning of "initial date of registration" in search of support elsewhere for its preferred construction of the statute. As we recognized in Talluto, "[c]ourts must not 'legislate under the guise of interpretation' " (id. at 315, citing People v Finnegan, 85 NY2d 53, 58 [1995]). The majority does not explain why the Court was bound by the plain language in Talluto—drafting error and all—but can deviate from it here.

Footnote 1:See also Mem to Governor from Chief of Legis Bur, Bill Jacket, L 1999, ch 453 at 6 ("The amendments made in this bill address the concerns set forth in the Federal District Court decision by explicitly providing the procedures for the risk assessment determinations conducted in state court"); Letter from Div of Crim Just Servs, Bill Jacket, L 1999, ch 453 at 7-8 (noting that the State is currently enjoined from enforcing certain aspects of SORA on due process grounds and that "[t]his bill cures those deficiencies"); Senate Introducer's Mem in Support of 1999 NY Senate Bill S6100, enacted as L 1999, ch 453 (referencing the Doe v Pataki injunction and stating that "[t]he primary purpose of the bill is to incorporate in the Act additional due process standards" in response to that opinion).

Footnote 2:The legislative history for the 2006 amendment of section 168-h explains that "[u]pon the ten year anniversary of the effective date of New York State's sex offender registry, January 21, 2006, hundreds of registered sex offenders will no longer be required to register by the end of that month" (Senate Introducer's Mem in Support, Bill Jacket, L 2006, ch 1 at 3). This reference to offenders who first registered on SORA's 1996 effective date—namely, those then on probation or parole in New York (see Doe v Pataki, 120 F3d 1263, 1266 [2d Cir 1997] [explaining to whom SORA applied upon its effective date])—indicates the Legislature was focused on those who were convicted in New York.