People v Hudson (2024 NY Slip Op 04571)

People v Hudson

2024 NY Slip Op 04571

Decided on September 25, 2024

Appellate Division, Second Department

Dowling, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 25, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
PAUL WOOTEN
DEBORAH A. DOWLING
JANICE A. TAYLOR, JJ.

2021-07149
 (Ind. No. 5568/19)

[*1]The People of the State of New York, respondent, 
v
Nicole Hudson, appellant.

APPEAL by the defendant from a judgment of the Supreme Court (Laura Johnson, J.), rendered September 20, 2021, and entered in Kings County, convicting her of assault in the first degree, upon her plea of guilty, and imposing sentence.

Twyla Carter, New York, NY (Paris C. DeYoung of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Jean M. Joyce of counsel), for respondent.

DOWLING, J.

OPINION & ORDER
The Domestic Violence Survivors Justice Act (L 2019, ch 31, § 1; L 2019, ch 55, § 1, part WW, § 1 [eff May 14, 2019]; hereinafter DVSJA), which amended Penal Law § 60.12, permits sentencing courts to impose reduced, alternative sentences in certain cases involving defendants who are victims of domestic violence. This appeal presents the question of whether a defendant may waive a hearing to determine his or her eligibility for a reduced sentence under the DVSJA as a condition of a negotiated plea agreement. We hold that such a hearing may be waived as a condition of a negotiated plea agreement and, for the reasons that follow, affirm the judgment of conviction.
I. Factual and Procedural Background
On July 13, 2019, during a block party at the defendant's home in Brooklyn, the defendant ran over the victim with her vehicle, reversed the vehicle back over the victim's body, and then drove the vehicle forward again over the victim, in essence striking the victim three times with her vehicle before eventually dragging the victim down the street under the vehicle and fleeing the area. The victim survived but suffered significant injuries to her spine that left her lower extremities permanently paralyzed, among others injuries. The defendant was charged by Kings County Indictment No. 5568/19 with crimes including attempted murder in the second degree and two counts of assault in the first degree.
While the matter was pending, the defendant requested that the Supreme Court hold a hearing to determine her eligibility under the DVSJA for an alternate, reduced sentence pursuant to Penal Law § 60.12. The request was supported by a psychological evaluation of the defendant, conducted by a licensed psychologist after the defendant's arrest, detailing the defendant's self-described exposure to interpersonal violence and the defendant's narrative of the events of July 13, 2019. Among other matters, the defendant disclosed varying instances of domestic violence which she experienced during her relationship with a former boyfriend. The defendant also recounted to the psychologist that her former boyfriend had unexpectedly arrived at the block party on July 13, 2019. The defendant explained that a fight began after her former boyfriend learned that the [*2]defendant was in a new relationship and that, while trying to escape what she perceived to be a life-threatening situation, the defendant hit the victim with her vehicle. The psychologist concluded that the defendant exhibited symptoms of posttraumatic stress disorder and that the defendant's description of the events of July 13, 2019, suggested that the defendant "may well have been impacted by her history of exposure to trauma and violence."
On July 1, 2021, the defendant entered a plea of guilty to one count of assault in the first degree in full satisfaction of the indictment in exchange for a determinate term of imprisonment of five years, to be followed by five years of postrelease supervision. Prior to the defendant accepting the plea, the assistant district attorney advised the defendant that the plea offer, inter alia, required the defendant to waive a hearing under the DVSJA to determine her eligibility for a reduced sentence pursuant to Penal Law § 60.12. Defense counsel stated that he believed the defendant was entitled to the hearing and that asking her to waive it went "against the spirit of why the law was created." Defense counsel further stated that "multiple conversations" were had with the defendant regarding the plea offer, and that the defendant was unwavering in her intent to accept the plea offer. The Supreme Court, noting the absence of case law in this area, also expressed concern as to whether a defendant may waive a DVSJA hearing as condition of a plea agreement, but concluded that the hearing was waivable. During the ensuing colloquy with the court, the defendant affirmed, among other things, that she had an opportunity to fully discuss with her attorney the condition that she waive a DVSJA hearing and that she agreed to waive a DVSJA hearing as part of the plea agreement in exchange for the promised sentence. Thereafter, on September 20, 2021, the court imposed the promised sentence of a determinate term of imprisonment of five years, to be followed by five years of postrelease supervision.
The defendant now contends that the Supreme Court erred in failing to hold a hearing pursuant to the DVSJA to determine her eligibility for a reduced sentence and that the matter should be remitted to the court for resentencing after a hearing pursuant to Penal Law § 60.12. The defendant further contends that the 5-year period of postrelease supervision imposed was excessive and should be reduced to 2½ years in the interest of justice.
II. Discussion
A. The DVSJA Waiver
As a preliminary matter, we reject the People's contention that the issue of whether the Supreme Court erred in failing to hold a DVSJA hearing prior to imposing sentence is unpreserved for appellate review. This issue was adequately preserved by the defendant's preplea request that the court hold a DVSJA hearing to determine her eligibility for a reduced sentence and the concerns raised by defense counsel at the plea proceeding as to whether the hearing can be validly waived, and the Supreme Court expressly decided the issue of whether a DVSJA hearing could validly be waived as part of a plea agreement (see CPL 470.05[2]; People v Lessane, 142 AD3d 562, 563; cf. People v Proctor, 79 NY2d 992, 994).
Plea negotiating is well established as "a vital part of our criminal justice system" (People v Seaberg, 74 NY2d 1, 7; see People v Avery, 85 NY2d 503, 506) and "includes 'the surrender of many guaranteed rights'" (People v Pacherille, 25 NY3d 1021, 1023, quoting People v Seaberg, 74 NY2d at 7). "Conditions imposed as part of a plea arrangement are valid if the parties agree to them and they do not violate any statute or contravene public policy" (People v Avery, 85 NY2d at 507; see People v Seaberg, 74 NY2d at 7; see also People v Hansen, 95 NY2d 227, 230; People v Allen, 86 NY2d 599, 602). The class of rights which may not be waived as part of a plea negotiation is "grounded in the integrity of our criminal justice system and 'the reality of fairness in the process'" (People v Muniz, 91 NY2d 570, 574, quoting People v Seaberg, 74 NY2d at 9) and "implicate[s] either an infirmity in the waiver itself or a public policy consideration that transcends the individual concerns of a particular defendant to obtain appellate review" (id.).
Of course, "an integral part of the plea bargaining process is the negotiated sentence" (People v Farrar, 52 NY2d 302, 306; see People v Avery, 85 NY2d at 506). "The plea bargain, or negotiated sentence, enables the parties to avoid the delay and uncertainties of trial and appeal and permits swift and certain punishment of law violators with sentences tailored to the circumstances of the case at hand" (People v Seaberg, 74 NY2d at 7). "[T]he sentencing function rests primarily with the Judge, whose ultimate obligation is to impose an appropriate sentence" (People v Farrar, 52 NY2d at 306; see People v Suitte, 90 AD2d 80, 83).
The DVSJA, enacted in 2019, amended Penal Law § 60.12 to provide sentencing [*3]courts with alternate, reduced sentencing ranges in certain cases involving defendants who are victims of domestic violence (see People v Burns, 207 AD3d 646, 648). The statute permits the imposition of a reduced sentence "without diminishing the seriousness of the offense or finding the crime to have been justified" (id.; see People v Addimando, 197 AD3d 106). Specifically, Penal Law § 60.12(1) provides that a sentencing court "may instead impose" the alternate, reduced sentencing scheme where the defendant stands convicted of certain offenses, if the court concludes, "upon a determination following a hearing," that: (1) "at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the defendant"; (2) "such abuse was a significant contributing factor to the defendant's criminal behavior"; and (3) "having regard for the nature and circumstances of the crime and the history, character and condition of the defendant, . . . a sentence of imprisonment pursuant to [Penal Law § 70.02] would be unduly harsh" (see People v Burns, 207 AD3d at 648; People v Addimando, 197 AD3d 106; see also People v Krista M.G., 228 AD3d 1300; People v Smalls, 128 AD3d 1229, 1230).
For the crime of assault in the first degree, a class B violent felony, the sentencing scheme of Penal Law § 70.02 provides for a minimum determinate term of imprisonment of 5 years and a maximum term of imprisonment of 25 years (see id. § 70.02[1][a]; [3][a]). The alternate sentencing scheme of Penal Law § 60.12 allows a court, in its discretion, to impose a determinate term of imprisonment of between one year and five years or, in the alternative, a definite sentence of imprisonment of one year or less, or a term of probation (see id. § 60.12[2][a]).
"[W]hen presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the Legislature" (People v Addimando, 197 AD3d at 110-111 [internal quotation marks omitted]; see People v Galindo, 38 NY3d 199). "Generally, the plain meaning of the statutory text is the best evidence of legislative intent" (People v Galindo, 38 NY3d at 203 [internal quotation marks omitted]; see People v Wallace, 31 NY3d 503, 507; Deutsche Bank Natl. Trust Co. v Lubonty, 208 AD3d 142, 147-148). Moreover, "[i]n a manner consistent with the statutory text, the court, 'in appropriate circumstances, . . . may inquire into the . . . purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history'" (Anonymous v Castagnola, 210 AD3d 940, 943-944, quoting Matter of Peyton v New York City Bd. of Stds. & Appeals, 36 NY3d 271, 280 [internal quotation marks omitted]; see People v Wallace, 31 NY3d at 507).
Here, nothing in the plain language of Penal Law § 60.12, or the purpose and policy goals of the Legislature in enacting the statute, leads this Court to conclude that a DVSJA hearing is in the category of rights which may not be waived (see People v Muniz, 91 NY2d at 574). As recognized by the defendant, Penal Law § 60.12 contains no language requiring a sentencing court to hold a DVSJA hearing in every case containing allegations that the defendant is a victim of domestic violence, regardless of whether a hearing was requested, prior to announcing sentence. A defendant wishing to avail himself or herself of the possibility of a reduced sentence must instead request a DVSJA hearing to determine his or her eligibility before the sentencing court (see People v Addimando, 197 AD3d at 112 [the evidentiary burden of demonstrating the existence of the enumerated factors at a hearing is "borne by the defendant, as the movant"]; see also People v Smalls, 128 AD3d at 1230 [finding that a defendant who fails to request a DVSJA hearing before a sentencing court may not obtain appellate review of the issue of whether he or she should have been sentenced pursuant to Penal Law § 60.12]). Where a DVSJA hearing is held, Penal Law § 60.12 provides that the court "may" apply the alternative sentencing scheme if the stated factors are established by the defendant. This permissive language reflects the Legislature's intent that sentencing under Penal Law § 60.12 be an option exercised in the sentencing court's discretion (see Matter of Scoglio v County of Suffolk, 85 NY2d 709, 712; People v Addimando, 197 AD3d at 112). This construction is further supported by statements made by the sponsors of the bill explaining that
"[t]his bill would provide a judge with discretion in sentencing . . . domestic violence survivors who are convicted of certain crimes where domestic violence was a significant contributing factor. . . . It does reduce the sentences greatly, but the judge has the discretion to establish that [the factors exist]. . . . [W]e are empowering the judge in this case, not commanding the judge" (NY Assembly Debate on Assembly Bill A03974, Mar. 4, 2019 at 9, 12).
Certainly, where the stated factors are established, it may well be an improvident exercise of the sentencing court's discretion not to consider and apply the alternate sentencing scheme (see People v Addimando, 197 AD3d at 112). Nevertheless, for the purposes of our analysis, we find that by limiting application of the alternate sentencing scheme of Penal Law § 60.12 in this regard, the Legislature did not intend for a DVSJA hearing to be held in every instance.
Relying on People v Rudolph (21 NY3d 497), the defendant argues that a DVSJA hearing is too valuable a right to be sacrificed in the plea negotiating stage and can never be waived. In Rudolph, the Court of Appeals held that an eligible offender may not relinquish their right to receive youthful offender treatment pursuant to CPL 720.20(1) as part of a plea agreement (see People v Rudolph, 21 NY3d at 501). The Court of Appeals found that the Legislature's use of the word "must" in CPL 720.20(1) when describing the court's obligation to determine a defendant's youthful offender status reflected an explicit "policy choice" that a youthful offender determination be made in "every case where the defendant is eligible, even where the defendant fails to request it, or agrees to forgo it as part of a plea bargain" (People v Rudolph, 21 NY3d at 501). In concluding that a youthful offender determination must be made in every case, the Court of Appeals also discussed the legislative purpose of CPL 720.20(1) and explained that "[t]he judgment of a court as to which young people have a real likelihood of turning their lives around is just too valuable, both to the offender and to the community, to be sacrificed in plea bargaining" (People v Rudolph, 21 NY3d at 501) and that "[t]o disable a court from making that decision is effectively to hold that the defendant may not have the opportunity for a fresh start, without a criminal record, even if the judge would conclude that that opportunity is likely to turn the young offender into a law abiding, productive member of society" (id.).
We find Rudolph distinguishable from this case. The DVSJA, in contrast to CPL 720.20(1), does not include the explicit word "must." "Courts 'cannot amend a statute by inserting words that are not there, nor will a court read into a statute a provision which the [l]egislature did not see fit to enact'" (People v Corr, ___ NY3d ___, ___, 2024 NY Slip Op 03379, *2, quoting People v Hardy, 35 NY3d 466, 474 [internal quotation marks omitted]). The consequence of a defendant's waiver of a DVSJA hearing is also profoundly different from those relinquished by a waiver of youthful offender treatment. The impact of a youthful offender adjudication on a juvenile impacts the very existence of that offender's criminal conviction (see CPL 720.20[3]; People v Rudolph, 21 NY3d at 505 [Graffeo, J., concurring] ["article 720 permits the sentencing court to vacate a criminal conviction that has been lawfully obtained—an extraordinary benefit unlike any other right granted in the Criminal Procedure Law. In adopting such a procedure, the legislature meant to ameliorate the sometimes harsh effect of trying eligible youth in adult courts"]). The DVSJA, however, relates only to sentencing by allowing, but not requiring, the imposition of reduced sentences in cases involving defendants who are victims of domestic violence (see People v Addimando, 197 AD3d at 112). Neither the existence of the defendant's conviction nor the integrity or fairness of the criminal process is affected by a DVSJA determination (see Penal Law § 60.12; People v Burns, 207 AD3d at 648).
We note that the defendant does not dispute that her waiver of a DVSJA hearing was otherwise knowingly, intelligently, and voluntarily made. The People required the DVSJA waiver as a condition of the lenient five-year term of imprisonment offered, which is the statutory minimum for a class B violent felony (see Penal Law § 70.02) and which falls within the bounds of the alternate sentencing scheme of Penal Law § 60.12. The People and the defendant engaged in plea negotiations for the promised sentence based on the fact that the defendant was in fact guilty of inflicting grave, serious injuries to the victim and to avoid the rigors of trial. Moreover, the issue of the defendant's waiver of a DVSJA hearing was discussed during the plea negotiations. We perceive no basis under the circumstances presented not to enforce the agreed-upon waiver negotiated by the defendant.
B. Remaining Contention
Turning to the defendant's remaining contention, she asserts that the 5-year period of postrelease supervision imposed was excessive and should be reduced to a period of 2½ years in the interest of justice (see CPL 470.15[3]). Here, we find that the 5-year period of postrelease supervision imposed was not excessive (see People v Suitte, 90 AD2d 80).
Accordingly, the judgment is affirmed.
IANNACCI, J.P., WOOTEN and TAYLOR, JJ., concur.
ORDERED that the judgment is affirmed.
ENTER:
Darrell M. Joseph
Clerk of the Court