[924 NYS2d 684]

In the Matter of JOHN DOE, Appellant, v DENISE O'DONNELL, as
Commissioner of the New York State Division of Criminal
Justice Services, Respondent.

Third Department, June 9, 2011

## APPEARANCES OF COUNSEL

*Kindlon, Shanks & Associates*, Albany (*Kathy E. Manley* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, Albany (*Robert M. Goldfarb* of counsel), for respondent.

## OPINION OF THE COURT

PETERS, J.P.

Convicted in Suffolk County in 1997 of the crime of sodomy in the third degree, petitioner was required to register as a sex offender under the Sex Offender Registration Act (*see* Correction Law art 6-C [hereinafter SORA]) and was subsequently adjudicated a risk level two sex offender. He thereafter relocated to Virginia where, based on his New York conviction, he was also required to register as a sex offender. In 2008, the Circuit Court for Fairfax County, Virginia granted petitioner's petition for removal of his name from the Virginia sex offender registry (*see* Va Code Ann § 9.1-910).

Later that year, petitioner filed his annual New York sex offender registration forms with the Division of Criminal Justice Services under protest and requested to be removed from the New York registry. In response, the Division informed petitioner that he had a lifetime obligation to register under SORA. Upon the Division's next request for his registration information in

2009, petitioner commenced this CPLR article 78 proceeding seeking, among other things, to annul the Division's determination requiring him to continue to register as a sex offender as in excess of its statutory authority and in violation of various provisions of the United States Constitution. Rejecting petitioner's constitutional arguments and finding that the Division properly determined that his continued registration under SORA was required, Supreme Court dismissed the petition. Petitioner appeals.

Petitioner contends that the language of SORA and the legislative intent underlying the statutory scheme demonstrate that it is not to be applied to sex offenders who have left the state and, therefore, the Division lacked jurisdiction to require his continued registration. "[W]hen interpreting a statute, we attempt to effectuate the intent of the Legislature and the starting point for discerning such intent is the language of the statute" (*Matter of New York State Crime Victims Bd. v Gordon*, 66 AD3d 1213, 1214 [2009]; *see State of New York v Patricia II.*, 6 NY3d 160, 162 [2006]; *Riley v County of Broome*, 95 NY2d 455, 463 [2000]). Furthermore, because SORA is remedial in nature (*see Matter of North v Board of Examiners of Sex Offenders of State of N.Y.*, 8 NY3d 745, 752 [2007]), it should be construed broadly and liberally to effectuate its purpose (*see Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]; *Matter of White v County of Cortland*, 97 NY2d 336, 339 [2002]). "And where, as here, 'the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency' " (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d at 660, quoting *Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 231 [1996]; *see Matter of New York City Tr. Auth. v New York State Pub. Empl. Relations Bd.*, 8 NY3d 226, 231 [2007]).

SORA requires that, for a risk level two sex offender such as petitioner, "[t]he duration of registration and verification . . . shall be annually for life" (Correction Law § 168-h [2]). While there is a procedure under SORA by which a risk level two sex offender may commence a proceeding to be removed from the requirements of registration, removal is unavailable until the sex offender has been registered for 30 years, and then only upon a finding that the offender's "risk of repeat offense and threat to public safety is such that registration or verification is

no longer necessary" (Correction Law § 168-*o* [1]). Otherwise, exemption from SORA's registration obligations is permitted only upon appellate reversal of the sex offender's conviction or a pardon by the Governor (*see* Correction Law § 168-f [5]). " 'Where a statute describes the particular situations in which it is to apply and no qualifying exception is added, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded' " (*Matter of Rodgers v New York City Fire Dept.*, 80 AD3d 1091, 1094 [2011], quoting *Matter of Alonzo M. v New York City Dept. of Probation*, 72 NY2d 662, 665 [1988]; *see People v Jackson*, 87 NY2d 782, 788 [1996]; *Matter of Connor v Deer Park Union Free School Dist.*, 195 AD2d 216, 220 [1994]). Moreover, while SORA expressly addresses an offender's relocation to another state, it does not provide for his or her removal from the sex offender registry under such circumstances (*see* Correction Law § 168-c). Had the Legislature intended to require the Division to remove a sex offender from New York's registry upon his or her relocation from this state, it would have so provided.

The construction that petitioner advances also confounds the purpose of SORA, which was enacted to protect the public from "the danger of recidivism posed by sex offenders" (L 1995, ch 192, § 1). The Legislature expressly recognized that

> "law enforcement agencies' efforts to protect their communities, conduct investigations and quickly apprehend sex offenders are impaired by the lack of information about sex offenders who live within their jurisdiction and that the lack of information shared with the public may result in the failure of the criminal justice system to identify, investigate, apprehend and prosecute sex offenders" (L 1995, ch 192, § 1).

Similarly, the purpose envisioned by SORA's sponsors was, in part, to create "[a]nnual registration requirements and corresponding procedural guidelines . . . to allow local law enforcement agencies and the state to monitor the whereabouts of sex offenders" (Senate Introducer Mem in Support, Bill Jacket, L 1995, ch 192, at 5). In our view, the statute's dual purposes of monitoring sex offenders' whereabouts and aiding law enforcement in prosecuting recidivist offenders would be frustrated if a sex offender's registration obligations were to cease when he or she moves out of the state. Indeed, such an offender could simply leave and then return without reregister-

ing, or relocate just outside of this state's borders, thereby posing a continuing public safety threat to New York citizens—situations which would effectively nullify the remedial objective of the statute. Only by continually monitoring a sex offender's whereabouts for the duration of his or her registration requirement can these express purposes be effected. Thus, we hold that the establishment of a residence in another state does not relieve petitioner of his SORA registration obligations.

Contrary to petitioner's contention, our decision in *People v Arotin* (19 AD3d 845 [2005]) does not warrant a contrary conclusion. There, in rejecting the defendant's argument that New York was required to adhere to his sex offender risk classification in Ohio—the state in which the registerable conviction occurred—in assessing his risk level under SORA, this Court stated that "[t]he administrative manner in which a state chooses to exercise the registration requirements for a sex offender who moves into its jurisdiction falls squarely within the power of that state and is not governed by the procedures in effect in the state where the offender previously resided" (*id.* at 846-847). Thus, *Arotin* holds that New York law controls with respect to a sex offender's registration obligations within this state, and that the registration obligations, if any, imposed by another state are determined by the law of that state. *Arotin* does not stand for the proposition that a sex offender's registration requirements can only be regulated by the state in which such offender resides.

 We reject petitioner's further assertion that requiring him to continue to register under SORA constitutes an extraterritorial application of the statute. Petitioner's continuing registration obligations under SORA are the product of his commission, and resulting conviction, of a sex offense in New York while a resident of this state. As petitioner's registration requirements under SORA were triggered by his conduct in New York, the statute as applied has no extraterritorial effect (*see State v Wigglesworth*, 186 Or App 374, 382, 63 P3d 1185, 1190 [2003]).*

---

\* Even if SORA's registration requirements had such effect in these circumstances, given the absence of any provision in SORA requiring an offender's removal from New York's registry upon relocation, the remedial nature of the statute and its aim of "protect[ing] communities by notifying them of the presence of individuals who may present a danger and enhancing law enforcement authorities' ability to fight sex crimes" (*Matter of North v Board of Examiners of Sex Offenders of State of N.Y.*, 8 NY3d at 752 [internal quotation marks and citation omitted]; *see* Senate Introducer Mem in

█ Petitioner also argues that simultaneously subjecting a sex offender to more than one state's registration requirements violates the Full Faith and Credit Clause of the United States Constitution. "The purpose of the Full Faith and Credit Clause is to avoid conflicts between [s]tates in adjudicating the same matters" (*Matter of Luna v Dobson*, 97 NY2d 178, 182 [2001] [citations omitted]; *accord People v Arotin*, 19 AD3d at 847). Such clause "is not implicated where the issue decided by a court in a sister state is different from the issue being decided by a New York court" (*Matter of Whitney*, 57 AD3d 1142, 1144 [2008]). Here, New York and Virginia have each separately adjudicated the risk posed by petitioner to their respective citizens and imposed registration requirements upon petitioner pursuant to each state's sex offender registration law. As neither state has attempted to adjudicate the same matter, the Full Faith and Credit Clause has not been violated (*see Matter of Smith v Devane*, 73 AD3d 179, 183 [2010], *lv denied* 15 NY3d 708 [2010]; *People v Arotin*, 19 AD3d at 847).

We have considered petitioner's remaining contentions and find them to be without merit.

ROSE, MALONE JR., STEIN and EGAN JR., JJ., concur.

Ordered that the judgment is affirmed, without costs.

---

Support, Bill Jacket, L 1995, ch 192, at 5), we would conclude that the Legislature intended the lifetime registration requirement to apply without regard to whether an offender has moved out of the state (*see generally Matter of Post v Burger & Gohlke*, 216 NY 544, 554-555 [1916]; *see Matter of Russo v Art Steel Co.*, 21 AD2d 942, 942-943 [1964]; *compare Manfredonia v American Airlines*, 68 AD2d 131, 137 [1979]).