People v Corley (2025 NY Slip Op 25238)

[*1]

People v Corley

2025 NY Slip Op 25238

Decided on November 3, 2025

Supreme Court, New York County

Conviser, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on November 3, 2025
Supreme Court, New York County

The People of the State of New York,

against
Royce Corley, Defendant.

SMZ 71234/21

New York County District Attorney Alvin L. Bragg, Jr. (Helen Haft, of counsel) for the People
Center for Appellate Litigation (Nicole P. Geoglis, of counsel) for the Defendant

Daniel Conviser, J.

This decision considers the question of whether a defendant who no longer lives in New York or has any plans to do so and is registered as a sex offender in a different state must also register as a sex offender in New York for a federal sex offense conviction which was adjudicated here. In this court's view, the Legislature did not intend for offenders like this to be subject to New York SORA registration. Controlling decisions from all four appellate divisions, however, most significantly a one sentence ruling from the First Department in this very case, have reached the opposite conclusion. Since this court is bound to follow those rulings, the Defendant's motion to dismiss this SORA proceeding is denied. As noted infra, this issue has been described as an "open question" in the Court of Appeals.
The parties agree that the Defendant was previously a resident of New York and that his crimes were committed here. They also agree that he has been a resident of Delaware for the past three years and that there is no evidence he plans to return to New York. Mr. Corely, moreover, is already registered as a sex offender where he lives, in Delaware. He has a Delaware driver's license and operates a Delaware business. Despite this, the People insist he must also register as a sex offender in New York potentially for life. In this court's view, as outlined in more detail infra, the result here is clearly contrary to the SORA statute and the statute's purpose and if implemented in accordance with the law would lead to absurd results. As explained in the final portion of this decision, however, those untoward consequences have apparently been avoided in New York thus far through an extraordinary policy: the State has apparently decided to simply not enforce any of SORA's provisions for out-of-state offenders once an initial SORA risk level has been set.
This Court's Prior Dismissal and Reversal
This court previously dismissed this proceeding on a different ground, holding in a 7-page unpublished decision, that Mr. Corley's federal convictions for child pornography and sex trafficking of a minor were not registerable offenses in New York. The First Department reversed that determination with respect to the child pornography conviction. People v. Corley, [*2]234 AD3d 500 (2025), lv dismissed 43 NY3d 987.[FN1]
 While the statutory provisions at issue are complex, the disagreement between this court and the First Department concerned the interpretation of one statutory phrase. The People claimed the Defendant was required to register with respect to his child pornography conviction pursuant to a provision of the SORA statute enacted in 2002 which required registration for eight specifically identified federal child pornography crimes, provided the elements of those crimes were "substantially the same" as those applicable when the New York statute was enacted in 2002. Correction Law § 168-a (2) (d) (iii). Registration under SORA, this court found, was only possibly applicable under this section because the Defendant's federal conviction did include the "essential elements" of an equivalent crime under New York law.[FN2]
In 2008, however, the federal statute at issue in this case was significantly amended to not only criminalize a person who "knowingly possesses" child pornography but also "knowingly accesses with intent to view" such pornography.
As the Court of Appeals explained in North v. Board of Examiners of Sex Offenders, 8 NY3d 745, 752-753 (2007) the 2002 SORA enactment's "substantially the same" provision exempted federal child pornography offenders from the duty to register in New York where Congress acted to "materially redefine" the elements of the statute applicable in 2002. The 2008 amendment significantly expanded the statute's coverage to no longer require the possession of child pornography for a federal conviction. The amendment for the first time criminalized accessing such pornography (through the internet, most commonly) with intent to view it. This court found that this amendment was a "material redefinition" of the crime. The First Department determined otherwise, holding, without further elaboration, that the 2008 amendment "did not materially define the crime to render it an 'inappropriate predicate [ ] for SORA registration' . . . which was the purpose of the 'substantially the same' language in subsection (iii)". quoting North.
Of significance to the issue on this motion, however, was another single sentence from the First Department's decision. The court held: "Defendant has not established that his relocation to a different jurisdiction nearby in Delaware renders this appeal moot (see People v. Melzer, 89 AD3d 1000, 1001, lv denied, 19 NY3d 803 (2012)." That issue is next discussed. 
People v. Meltzer & People v. O'Donnell
In Meltzer, the authority relied upon by the First Department, the defendant sex offender moved from New York to New Jersey prior to the SORA registration hearing and the court held that the hearing was nevertheless required to be conducted. It gave two reasons. The first was that SORA courts are required to conduct risk level determinations upon receiving recommendations from the Board of Examiners of Sex Offenders (the "Board"). That principle [*3]was later obviated by the Court of Appeals in People v. Liden 19 NY3d 271 (2012) (discussed infra) which did grant courts the authority to annul determinations of the Board concerning the obligation of individual sex offenders to be subject to SORA.
Second, the court adopted the reasoning of the court in Matter of Doe v. O'Donnell, 86 AD3d 238, 241-242 (3rd Dept 2011), lv denied 17 NY3d 713 (2011). In O'Donnell, the court held that an offender who had moved out of New York was nevertheless required to continue to be registered as a sex offender here. The O'Donnell court first explained that it had determined the defendant, who was required to register for life in New York, had to continue to register in New York because the statute provided no exemption for offenders who no longer lived here. The court cited a provision of the SORA statute which required offenders who moved out of New York to receive "general information" from the Division of Criminal Justice Services ("DCJS") about registration and notification procedures which "may apply" to offenders who relocate, arguing that if the Legislature intended to exempt offenders who moved out-of-state from New York they would have said so in that section. 
The court went on to cite the purposes of SORA, and quoted a provision of the SORA statute's legislative intent section, discussed infra, even though this provision, as quoted by the court, applied to "sex offenders who live within their [a New York law enforcement agency's] jurisdiction". 86 AD3d at 241 (quotation omitted). Speculating that an offender might leave New York—only to secretly return someday to commit new sex crimes—the court said:
Indeed, such an offender could simply leave and then return without reregistering, or relocate just outside of this state's borders, thereby posing a continuing public safety threat to New York citizens — situations which would effectively nullify the remedial objective of the statute. 86 AD3d at 241-242.
The court rejected the Defendant's constitutional challenges and held that "the establishment of a residence in another state does not relieve the petitioner of his SORA registration". 86 AD3d at 242. The Fourth Department, citing Meltzer and O'Donnell reached the same conclusion in People v. Rocktaschel, 151 AD3d 1650 (4th Dept 2017), lv dismissed, 30 NY3d 989 (2017) holding that "it is well settled that the establishment of a residence in another state does not relieve petitioner of his SORA registration obligations" (quotation omitted). It has been observed, however, that the issue of whether out-of-state residents must continue to register under SORA is an "open question" in the New York Court of Appeals. People v. Corr, 42 NY3d 668, 688 (2024) [Judge Rivera, joined by Chief Judge Wilson, dissenting].[FN3]

The Defense Argument based on People v. Liden
The defense argues that O'Donnell & Meltzer are no longer controlling because of the Court of Appeals decision in Liden. That case concerned the procedural mechanism by which out-of-state registration challenges can be made. Prior to Liden, appellate courts had ruled that such challenges could only be asserted through Article 78 petitions. Liden held that such challenges could be asserted in SORA proceedings. But that decision did not undermine the substantive conclusions of the O'Donnell or Meltzer courts. It is true, as the defense argues, that prior to Liden courts simply had no authority to dismiss a SORA proceeding in a circumstance [*4]like that which arose here, absent an Article 78 petition. That lack of authority was an important reason for the Meltzer court's conclusion. But both Meltzer and O'Donnell also squarely confronted the statutory construction and policy issue in this case and ruled on it.
Even more problematic for the defense position in this case is the one sentence addressing this issue in the First Department's Corley decision. As noted earlier the court said: "Defendant has not established that his relocation to a different jurisdiction nearby in Delaware renders this appeal moot (see People v. Melzer, 89 AD3d 100, 1001, lv. denied, 19 NY3d 803 (2012)." Albeit brief, this sentence was, in the court's view, clear. First, the fact that the Defendant no longer lived in New York, did not mean that the People's appeal of this court's dismissal order was no longer reviewable. Second, the reason was that outlined in Meltzer: "The Supreme Court did not err in conducting the risk level assessment hearing after the defendant had moved back to New Jersey". 88 AD3d at 1001. That is the precise issue here. Both the First Department's decision in Corley and the Fourth Department's decision in Rocktaschel also followed Liden.
Defendant's Constitutional Due-Process Claims Are Denied
In addition to its statutory construction argument, the Defendant asserts that requiring him to register in New York would be violative of due-process and the principles of federalism. The court does not believe it can grant the instant motion with respect to Defendant's constitutional claims for three reasons. First, this court agrees with the Defendant's statutory construction argument and thus need not reach the constitutional claim. It is denying the motion only because it must comply with the First Department's order and other controlling appellate authority.
Second, the court does not find the Defendant's constitutional claims persuasive. The defense concedes that the construction of the statute appellate courts have provided must meet only rational basis scrutiny. It describes subjecting Mr. Corely to SORA registration in New York as "onerous" and the state's interest in such a rule "nonexistent."[FN4]
The court does not agree with either characterization. So long as he lives in Delaware, being required to register in New York is unlikely to cause a significant burden on Mr. Corley, because, as outlined at the end of this decision, New York is not enforcing SORA rules with respect to out-of-state residents. Second, the court does not believe the State's interest is "nonexistent". As the People outlined in detail in their submission on this motion, if an out-of-state resident moved to New York, and then sought to evade the responsibility for registering here, it would likely be easier to force compliance with registration requirements if that defendant was already on the New York registry, than if he was not on the registry and had to be compelled to be subject to New York rules for the first time. Thus, the state does have a policy interest in requiring out-of-state residents to register.
Finally, although the court presumes the Defendant's constitutional claims have never been presented to the First Department, this court doubts the First Department would find those claims persuasive. First some of those same claims were rejected in O'Donnell, which was then relied upon by Metlzer, which in turn was the basis for the First Department's residency conclusion in this case. The Defendant's constitutional claims are also founded on arguments about the misguided policies attendant to the requirement that out-of-state offenders must [*5]register under SORA. The First Department in concluding that Mr. Corley was required to register in New York, however, apparently rejected many of those same arguments.
Despite its conclusion on the Defendant's motion, this court continues to believe SORA does not apply to offenders who do not live in New York. It will next provide a detailed analysis for why that is so.
Subjecting Persons Who Do Not Live in New York to SORA 
Would be Clearly Contrary to the Statute's Purposes
SORA only applies to sex offenders who live in New York. It does not apply to sex offenders who live elsewhere. The Legislature made that clear in the second sentence of the legislative findings it enacted when the statute was first adopted in 1995:
The legislature further finds that law enforcement agencies' efforts to protect their communities, conduct investigations and quickly apprehend sex offenders are impaired by the lack of information about sex offenders who live within their jurisdiction . . ." L. 1995, Ch. 192, section 1 (emphasis added).
SORA was enacted to protect "members of the community, particularly their children, by notifying them of the presence of individuals in their midst who may present a danger". Doe v. Pataki, 120 F3d 1263, 1266 (2nd Cir 1997) (emphasis added). See also People v. Shader, 43 NY3d 129, 135 (2024); People v. Boone, 41 NY3d 573, 584 (2024) (both quoting Doe in citing the identical description of SORA's purpose). As the Shader court explained with respect to motions by a defendant to reduce an offender's SORA risk level: "The court must undertake 'a thorough analysis of a defendant's likelihood of reoffending and the danger the defendant poses to the community in which he or she resides' in the event of a reduced risk classification. 43 NY3d at 134 (2024) quoting People v. Davis, 179 AD3d 183, 191 (2nd Dept 2019).
Subjecting the Defendant to SORA Would be Clearly Contrary to the Statute
Subjecting out-of-state offenders to SORA would be clearly contrary to numerous provisions of the SORA law. These are next outlined.
Correction Law § 168-a (4) contains an extensive definition of the term "Law enforcement agency having jurisdiction" under the SORA statute. The purpose of this definition is to outline which state or local law enforcement agency will be responsible for conducting enforcement of the SORA statute based on where in New York State the offender lives or will attend an institution of higher education. Depending on such residence, particular police agencies are assigned this task. These may be village, town, city or county agencies or in some cases the New York State police. 
This provision cannot operate for offenders who do not live in New York. Subjecting Mr. Corley to registration and community notification in New York would make this provision a nullity. Indeed, it would be completely unclear under the statute which agency would be assigned to monitor his whereabouts in Delaware.
Similarly, DCJS is required to notify local law enforcement agencies of the address of sex offenders being released without a sentence of incarceration. Correction Law § 168-d (2). Since an offender who lives out-of-state is not subject to the jurisdiction of any such agencies, however, no such notifications can be made. DCJS must notify local law enforcement agencies when a sex offender changes their address. Correction law § 168-j (1) & (2). No such notifications can be made to any such agencies when an offender does not live in New York, however. Rather, the statute provides that when an offender moves to another state, DCJS must "notify the appropriate agency within that state of the new place of address". Correction law § [*6]168-j (3). That is because it is that other state—not the State of New York—which will be responsible for sex offender registration.
Local law enforcement agencies must compile lists of "vulnerable organizational entities" within their jurisdictions so that law enforcement can contact them regarding Level 2 offenders at moderate risk to re-offend. Correction law § 168-l (6) (b). Since no such local law enforcement agencies exist for out-of-state offenders, however, this provision cannot operate. Local law enforcement agencies may disseminate an offender's exact address for Level 3 offenders. § 168-l (6) (c). Under this provision, were Mr. Corley determined to be a high risk offender, law enforcement could notify New Yorkers of his exact address in Wilmington, Delaware.
Some provisions of the statute would simply be pointless for out-of-state offenders. Correction Law § 168-b (2) (b) contains extensive requirements for DCJS to provide information about registered sex offenders to New York State agencies so such agencies do not improperly provide certain reimbursements or funds to registered sex offenders. No such funds are provided to out-of-state residents.
Correction Law § 168-b (12) requires DCJS to provide information on Level 2 and 3 offenders to housing authorities, so such authorities can enforce restrictions on the residence of such offenders in public housing. If an offender does not live in New York, however, it is obviously pointless to inform any housing authority in the State about the offender. Offenders on parole must promptly notify parole officers about any change in their address. If an offender does not live in New York, however, the offender cannot be on parole in New York, so again this provision is pointless for out-of-state offenders. Correction Law § 168-c (1). The next paragraph of the statute contains another provision not applicable to out-of-state offenders: the requirement that probation officers notify DCJS whenever an offender on probation [in New York] changes their address. Correction Law § 168-c (2).
The statute outlines its application to persons who are registered in other states, but then spend specified periods of time in New York as either "nonresident workers" or "nonresident students." Correction Law § 168-a (14); (15); 168-f (6). The Legislature obviously considered the circumstances under which nonresidents of New York would be subject to SORA. Mr. Corley does not meet any of these criteria.
The O'Donnell court, as noted supra, cited the following provision in support of its view that out-of-state offenders were required to register in New York, reasoning that if the Legislature intended to exempt such offenders from SORA registration, it would have done so in this subdivision:
The division [of criminal justice services] shall provide general information, in registration materials and annual correspondence, to registrants concerning notification and registration procedures that may apply if the registrant is authorized to relocate and relocates to another state or United States possession, or commences employment or attendance at an education institution in another state or United States possession. Such information shall include the address and telephone numbers for relevant agencies from which additional information may be obtained. Correction Law § 168-c (4).[FN5]
This passage clearly concerns notifications which are made to offenders who move out of New York about their possible registration obligations in a new state of residence (that is, obligations which "may apply", depending on a foreign jurisdiction's rules). As construed by the authorities outlined here, however, such offenders must also continue to register in New York, even while being notified of registration rules in the state they actually live in. United States territories, under this statute, are treated in the identical manner as states. Thus, we must believe that the Legislature intended that a sex offender who permanently relocated to Guam, American Samoa or the Northern Mariana Islands would nevertheless be required to continue to register as a sex offender in New York, often for life. 
Requiring Out-of-State SORA Registration Would Bring More Sex Offenders to New York
Under Correction Law §§ 168-b (1) (b) & 168-f (2) (b-2), Level 3 offenders must appear at the local law enforcement agency having jurisdiction once every year to have an updated photograph taken. For other offenders, an appearance must be made once every three years. Correction Law § 168-f (2). "Sexual predators" or Level 3 offenders must also personally appear at local law enforcement agencies every 90 days to verify their addresses. Correction Law § 168-f (3). That obligation to appear for such purposes is suspended during periods an offender is incarcerated but no provision is made to suspend such rules for offenders who do not live in New York. Id. Presuming an out-of-state offender could discern where in New York State to appear for such purposes, since, as noted earlier, the term "local law enforcement agency having jurisdiction" is a nullity for offenders who reside in other states, the offender would be required to frequently travel into New York State to have such photographs taken or an address verified. Offenders would, additionally, be required to travel to New York for other reasons were the statute applied to them. Mr. Corley, for example, traveled from Delaware to New York for his last court appearance in this case. He will again be required to travel to New York for a risk assessment hearing pursuant to this decision. 
SORA is intended to reduce the likelihood of sex offenses being committed in our state. Requiring sex offenders who have no reason to come to New York to come here would obviously facilitate the opposite tendency. A sex offender who is not in New York cannot commit a contact sexual offense here. It is only by requiring such offenders to come to New York that the risk of such an offense becomes more than zero. Indeed, an out-of-state offender who failed to come to New York to meet such photograph or verification requirements would be guilty of a crime. In determining whether SORA subjects out-of-state offenders to its provisions, the court's job, of course, is to attempt to discern the Legislature's intent. New York has acted to attract new businesses and investment. It has encouraged tourists to come here. It has adopted policies to promote job growth and make our state an attractive place to live. The Legislature did not intend the SORA statute to require more sex offenders to come to New York.
Simultaneous Registration in Two States: Community Notification as a Nullity
Mr. Corley will now be required to be subject to sex offender registration and possible community notification in two states, with different rules. Moreover, New York's community notification provisions will become a nullity. One can imagine how a law enforcement agency, busy confronting serious crimes, might go about notifying communities (if an appropriate community could even be identified) about Mr. Corley. "There is a sex offender living in [*7]Delaware. His name is Royce Corley. Here is his picture. We have no reason to believe he will ever return to New York [except to the extent he was required to because of this ruling]. It is always possible, however, he might at some point come here. Be on the lookout."
"Populating the registry with the names and information of individuals who do not pose a danger to children of sexual recidivism undermines the usefulness of the registry and wastes government resources on tracking people who are not the intended targets of SORA nor implicate the public risk and law enforcement needs that first necessitated SORA registries." People v. Brown, 41 NY3d 279, 297 (2023) (holding that the requirement for SORA registration for an unlawful imprisonment crime was a violation of due process) (quotation and citations omitted). With respect to the residents of this state (as opposed to Delaware), the danger the Brown court warned against is precisely what this court has now created.
This Court Believes O'Donnell and its Progeny Were Wrongly Decided
The most thorough discussion of the principle that offenders who don't live in New York must be subject to New York SORA registration was outlined by the O'Donnell court in 2011. O'Donnell was then relied upon in Meltzer which was then cited as the sole authority for the First Department's one sentence conclusion on the same issue in this case. The Fourth Department's decision in Rocktaschel asserted the same rule was "well settled" citing O'Donnell and Meltzer. This court respectfully believes, however, that O'Donnell and its progeny were wrongly decided. The court has outlined why in the discussion above. But, in addition, in the court's view, the reasons outlined by the O'Donnell court for subjecting out-of-state residents to New York SORA registration rules were not persuasive.
O'Donnell first relied upon the general principle that "[w]here a statute describes the particular situations in which it is to apply, and no qualifying exception is added, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded". 86 AD3d at 241(quotation and citations omitted). The court cited a provision of the statute which allowed certain offenders to be removed from the registry after 30 years and another indicating that SORA was not applicable to offenders whose convictions were vacated. The court reasoned that since offenders who had moved out-of-state were not similarly excluded from the statute's coverage this indicated the Legislature intended such offenders to continue to be subject to SORA. Id. Neither of these cited provisions, however, concerned out-of-state offenders. Of greater relevance, the court noted a provision (cited supra) directing state agencies to provide general information to offenders who moved to other jurisdictions about registration rules in those locations. Correction law § 168-c (4). As noted earlier, however, in this court's view, that provision indicates the Legislature did not intend for out-of-state residents to be subject to two inconsistent state sex offender regulatory systems. 
Applying this statutory construction principle to the SORA provisions which do relate to out-of-state residents supports the argument that out-of-state residents are not subject to New York SORA registration. As noted above, Correction law §§168-a (14) & (15) & 168-f (6) apply SORA registration rules to certain out-of-state residents, those who are non-resident workers or students in New York. Applying the principle cited in O'Donnell, if the Legislature intended to also apply SORA to out-of-state residents who were not non-resident workers or students it would have said so.
The assertion that the principle of expressio unius est exclusio alterius (the expression of one thing as excluding others) creates an "irrefutable inference" that an absent provision was intended to be omitted has a long citation history by the New York Court of Appeals. That [*8]quotation traces back, however, to identical language in NY Statutes, § 240. See Patrolmen's Benevolent Assn. of City of New York v. Leftkowiz, 41 NY2d 205, 208-209 (1976). The complete citation in NY Statutes makes clear that the application of this rule to any particular statutory construction question requires an evaluation of a statute's purpose:
The maxim expressio unius est exclusio alterius is not, however, an ironbound rule of law excluding in all cases from the operation of a statute those things which are not enumerated therein. It is merely an aid to be utilized in ascertaining the meaning of a statute when its language is ambiguous, and should be applied to accomplish the legislative intention, not to defeat it. If the language of a statute indicates that other things than those mentioned are intended to be included within its operation, the maxim will not necessarily require their exclusion, but in such case the intention to the contrary must be discernable from the context of the act itself. NY Statutes § 240.
There are three foundational statutory construction principles which demonstrate that the Legislature did not intend out-of-state residents to be subject to New York SORA registration. First, "[a] basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment, and that construction is to be preferred which furthers the object, spirit and purpose of the statute". NY Statutes, § 96. As outlined supra, the Legislature in its 1995 SORA enactment, the Second Circuit and the Court of Appeals have all held that the purpose of SORA is to protect people from sex offenders who live in their communities—not who live in other states. Second, "[i]n the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning". Id. § 231. As outlined supra, applying SORA to out-of-state offenders would make numerous important provisions of the SORA statute a nullity, having no purpose or effect. Finally, the Legislature must be presumed to not have enacted a statute which would create unreasonable or absurd results. Id. §§ 143; 145. Requiring police officers to notify members of a community about a sex offender when there was no evidence that offender would ever visit that community; or believing the Legislature was intent on requiring sex offenders to come to New York who had no interest in visiting here would require a construction of the SORA statute which was both unreasonable and absurd.
The O'Donnell court also provided two policy arguments (in addition to the general argument that subjecting offenders like Mr. Corley to registration would further SORA's goals) for why such registration should be required. The first was that it was always possible an offender living outside New York could return here. It is also possible that sex offenders who did not previously live in New York might visit or relocate here. It is possible that persons living in New York who have never committed a sex crime might commit one in the future. But such possibilities, in this court's view, do not provide a valid argument for subjecting out-of-state sex offenders to SORA in violation of the statute's purposes and provisions.
SORA, moreover, already provides detailed rules for applying its provisions to sex offenders who move to New York from other states. Correction law §168-k. That provision references a subdivision of the statute which defines the precise federal crime the First Department determined subjects Mr. Corley to New York SORA registration, Correction law § 168-a (2) (d). Were Mr. Corley ever to move back to New York, he would be subject to SORA registration pursuant to the rules outlined in the SORA statute.
The O'Donnell court's second related policy argument was more evocative. That was the specter of a sex offender secretly setting up a residence "just outside of this state's borders, [*9]thereby posing a continuing public safety threat to New York citizens". One might imagine such a person surveying potential apartments near the Holland or Lincoln tunnels or the George Washington bridge. Beyond the fact that there is no evidence such a thing has ever happened, however, this argument has multiple fallacies.
An offender who is menacing strangers in a community doesn't need to do it in a particular state. There are potential victims in New Jersey just as there are in New York. SORA cannot absolutely prevent sex offending. It doesn't operate like a GPS device, alarm system or force field which notifies authorities whenever a sex offender enters a jurisdiction. An offender intent on sexually offending subject to SORA may be able to do so no matter where the offender lives — and regardless of whether he is on New York's SORA registry. In this imagined scenario, the offender would be subject to sex offender registration, just as Mr. Corley already is. He would be subject to registration in the state where he lived. Finally, if we are seriously concerned about sex offenders setting up residences just over the borders of other states, so they can prey on that other state's citizens without being registered there, we might consider requiring sex offender registration in every contiguous state (in this example, not only New York, but also Pennsylvania and Delaware). To provide even greater protection, registration might be required in every state which was a relatively short distance from an offender's home. The First Department in this case described Mr. Corley's residence in Wilmington, Delaware as "nearby". But no such rules exist. 
New York's Apparent Solution to These Problems: Don't Enforce the Law
In reading the submissions on this motion, the court learned that New York State has found a solution to all the absurd results which would arise by subjecting out-of-state residents to SORA registration and community notification. That is to not enforce any of the statute's rules after an offender's risk level has been set, so long as the offender continues to live in another state. This court will call that system "SORA lite".
The People in their arguments on this notion helpfully consulted with state authorities running the Sex Offender Monitoring Unit. An official from the unit informed the People about how offenders who don't live in New York are treated under SORA:
According to [a representative of the New York Sex Offender Monitoring Unit "SOMU"], a sex offender has reporting, verification, and notification obligations in the state of their registered address. For those offenders required to register under SORA who decide to leave the state to reside in another jurisdiction in which they are required to meet reporting, verification, and notification obligations, they are no longer subject to the same requirements in New York. Rather, although they will remain on the registry in this state, with their corresponding risk level, they will be subject to the aforementioned requirements only upon a return to New York.[FN6]
The policy described here is flatly unlawful. There is no authority under SORA for New York to create two categories of SORA registrants: one which must follow all the rules, and a second which need follow none of them. The fact that the State has felt compelled to exempt out-of-state sex offenders from almost all SORA's requirements speaks volumes about how practically absurd imposing those rules would be. Moreover, the process for subjecting offenders who do move to New York from other states is not the one provided under the SORA lite registry. "The procedure for registration of sex offenders who move to New York from other states is set out in Correction Law 168-k" [which requires offenders to newly register]. Liden, 19 NY3d at 275.
The court does not fault the state employees who have determined that the only option regarding out-of-state offenders like Mr. Corley is to ignore the law. To do otherwise would create all the untoward outcomes this court has outlined. But there is one other extraordinary aspect of this non-compliance. It concerns convicted and dangerous sex offenders—the most fraught subject imaginable. The State would not exempt convicted sex offenders from the duty to verify their registration information or intentionally not comply with the State's obligation to inform local communities about them unless that was necessary. That imperative has arisen from the mistaken construction of the law.
The court will now conduct a SORA hearing at which it will determine whether Mr. Corley is at low, moderate or high risk to offend. The hearing will require that resources be expended from the court, the prosecutor, the defense and then state authorities but will be mostly pointless. The purpose of these designations is to determine the extent to which the offender must periodically verify identifying information and law enforcement must make efforts to notify communities about the offender. None of these public safety efforts, however, will apparently be made for Mr. Corely so long as he continues to live in Delaware.
The court will also have to consider whether the fact that Mr. Corley is not in New York should impact whether he is at a low, moderate or high risk to sexually offend here. Obviously, if Mr. Corley does not come to New York (and there is no evidence he plans to) he would be under no risk to commit a contact sexual offense here. On the other hand, the detailed SORA Risk Assessment Guidelines and Commentary courts must use in determining risk levels nowhere alludes to an offender's residence in a different state as a relevant consideration in determining risk. That is because the SORA statute was never intended to cover such offenders. Were this court to not consider Mr. Corley's residence, it might then determine him to be at a high risk to sexually offend subject to lifetime registration even if he never set foot in this state again.
The one immediate practical impact which will arise from the hearing will be a determination of how long Mr. Corley will remain on the dormant SORA registry. That period will be either 20 years or life (with the opportunity to reduce such a lifetime period to 30 years in certain cases). In the final irony, however, were Mr. Corley ever to return to New York, his registration in New York now might significantly reduce the period he was actually monitored [*10]under the New York SORA system. That is because, as noted supra, an offender who moves to New York from another state gets no credit for the time he was monitored under that other state's registry. He must begin the registration period anew upon arriving in New York. People v. Corr, supra. Thus, for example, were Mr. Corley not registered in New York, registered in Delaware for 10 years, then moved to New York and required to register for 20 years here, the 20 years would begin when he moved here. Since he is now registered under the dead letter SORA lite system, however, he might persuasively argue that, upon moving to New York, he should get credit for every year he was already registered here, even though that registration did not result in any verification, community notification, public safety monitoring or public safety benefit to the people of New York of any kind.
For all of those reasons, the Defendant's motion to dismiss this proceeding is denied. The court will schedule a SORA risk assessment hearing [requiring the Defendant to again come to New York—a place he otherwise would have no reason to visit] as soon as possible. This court believes that even under SORA lite, Mr. Corley has the right to personally attend his SORA hearing. See Correction Law § 168-n. On the other hand, since offenders under SORA lite are subject to some requirements of the statute but not others, that is perhaps an open question. This constitutes the decision and order of this court.
November 3, 2025
Daniel Conviser, A.J.S.C.

Footnotes

Footnote 1:The leave application was dismissed by the Court of Appeals based on their determination that the First Department's decision had not finally adjudicated the proceeding.

Footnote 2:As this court outlined in its unpublished decision, the federal child pornography conviction concerned 5 obscene images on a portable storage device found in Mr. Corley's pocket depicting a 16-year-old victim he was found guilty of sex trafficking. Since a conviction for child pornography possession under New York law, however, requires that a victim be under the age of 16, the possession of these images was not a child pornography possession crime under New York law. See § PL 263.16.

Footnote 3:Corr did not consider the question here, but rather held that where an out-of-state offender newly registered in New York, the offender would not receive credit for the period he was previously registered in a foreign jurisdiction.

Footnote 4:Defendant's motion, paragraph 28

Footnote 5:The citation in the O'Donnell decision was to Correction Law § 168-c, which contains four subdivisions, but the argument in the decision made clear it was addressing only one subdivision of the statute: subdivision (4). 86 AD3d at 241.

Footnote 6:Affirmation in Opposition to Defendant's Motion to Dismiss Proceeding, September 26, 2025, paragraph 9. The court has redacted the name of the state representative the People identified as providing this information. The People in their submission repeatedly emphasized that so long as Mr. Corley lived in Delaware, he would not need to comply with any of SORA's requirements following his risk assessment hearing. "[T]he defendant would not be required to report to any New York Office, or verify his address and appear in person on a regular basis in this state" (paragraph 18). Mr. Corley would have "no additional burden of reporting in New York" after his initial hearing. Id. So long as he lived in Delaware, Mr. Corley would have no "attendant reporting and verification obligations". Id. If the Defendant was determined to be a Level 3 offender at high risk to re-offend, he "would have no obligations under a Level 3 designation should he continue to reside in Delaware" (paragraph 23).